IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CR-311-BO-1
No. 5:15-CV-14-BO

| | |
|---|---|
| BENJAMIN ROBERT DAVIS,<br>Petitioner, | )<br>)<br>) |
| v. | )      O R D E R |
| UNITED STATES OF AMERICA,<br>Respondent. | )<br>)<br>)<br>) |

This matter is before the Court on petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government has moved to dismiss the petition, and petitioner has responded. A hearing was held on petitioner's second basis for relief (hereinafter, "Claim Two") at Raleigh, North Carolina, on June 1, 2016. Following the hearing, both parties submitted briefing on Claim Two. The entire matter is now ripe for ruling.

## BACKGROUND

Petitioner pled guilty, without a written plea agreement, to a single charge of possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 on March 21, 2012. [DE 1, 13]. On September 19, 2012, the Court sentenced petitioner to 180 months' imprisonment, which was the lowest possible active sentence, and three years of supervised release. [DE 33, 35, 40].

On October 1, 2012, petitioner noticed an appeal to the United States Court of Appeals for the Fourth Circuit. [DE 37]. The court of appeals affirmed this Court's judgment. [DE 44, 45, 48]. Petitioner petitioned for certiorari and was denied.

Petitioner filed the instant motion under 28 U.S.C. § 2255 on January 10, 2015. After several continuances upon petitioner's request, a hearing was held in this matter on June 1, 2016.

## DISCUSSION

The government moves to dismiss the motion for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000).

Petitioner brings several ineffective assistance of counsel claims. To prevail, petitioner must show (1) deficient performance, meaning that "counsel's representation fell below an objective standard of reasonableness" and (2) resulting prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Strickland*, 466 U.S. at 689–90).

2

The Court now considers each of petitioner's claims in turn, in light of the above standards.

I.  Claim One: "Improper Information Considered at Sentencing"

In Claim One, petitioner argues that he was improperly sentenced under the Armed Career Criminal Act (ACCA or "the Act") because the Court considered improper information in determining that his qualifying predicate felonies occurred on separate occasions; he also alleges that his counsel was ineffective for failing to raise or litigate this issue at sentencing. [DE 49].

Without an intervening change in the law, a petitioner cannot re-litigate on collateral review issues that were decided and rejected on direct appeal. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)).

Here, petitioner argued on appeal that he was sentenced under the Act in error. *See* [DE 44]. The court of appeals, following *de novo* review and in an opinion issued after the Fourth Circuit case law which petitioner cites, affirmed petitioner's sentence under the Act, finding that "Davis [] failed to show reversible error in the district court's application of the ACCA enhancement." *Id.* Accordingly, if petitioner now makes the same argument concerning the ACCA that he made on appeal, it is impermissible and must be dismissed.

If petitioner now makes a novel ACCA argument, it is properly considered procedurally defaulted, as it was not raised on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). To overcome this procedural default, petitioner must demonstrate cause and prejudice or actual innocence. *Id.* Here, petitioner has made no claim of actual innocence. Petitioner has, however, claimed that the error he alleges was prejudicial, so the Court now considers whether he has made a sufficient showing of cause and prejudice.

3

First, the Court considers whether there was cause for the procedural default. "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Here, petitioner claims ineffective assistance of counsel.

The Court cannot find that petitioner has demonstrated ineffective assistance of counsel as to this issue. Rather than objecting to the information used to determine whether the predicate offenses were separate instances, it appears petitioner's counsel believed additional information may actually benefit petitioner's argument, which can be considered sound trial strategy. *See Strickland*, 466 U.S. at 690 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks omitted)). Specifically, by offering information concerning the physical proximity of the homes at issue and temporal proximity of the offenses, petitioner's counsel could have reasonably believed that he was being a strong advocate for his client in trying to position his case beyond the reach of the ACCA. *See* [DE 40]. Accordingly, the Court cannot find that petitioner's counsel's performance at sentencing fell below on objective standard of reasonableness; accordingly, petitioner cannot establish ineffective assistance and clear the procedural default.

For all the reasons discussed above, Claim One must fail and is properly dismissed.

II.   Claim Two: "Unknowing and Involuntary Plea Due to Erroneous Advice of Counsel Regarding Applicability of the Armed Career Criminal Act"

In Claim Two, petitioner argues he received ineffective assistance of counsel when his counsel for the guilt phase, Daniel Boyce, "told him he could not be treated as an armed career criminal." [DE 49]. Due to the factual nature of this claim, the government agreed to an

4

evidentiary hearing on this issue, which took place in June 2016. Petitioner and Mr. Boyce testified.

A. Performance Prong

Testifying at the hearing, petitioner admitted that his assertion of what Mr. Boyce told him changed from "he could not be treated as an armed career criminal" [DE 49] to "I'm not worried about that" [DE 97, p. 12], which, in the Court's eyes, diminished petitioner's credibility at least as to the critical fact of what Mr. Boyce said about the possibility of the ACCA before petitioner's Rule 11. Petitioner stated without equivocation, however, that he "knew [his] attorney was not guaranteeing [him] a particular sentence." [DE 97, p. 20]. Petitioner also stated on cross examination that it was possible his interpretation (that he would not be an armed career criminal) may not have been what Mr. Boyce intended to convey but that it was "the idea [petitioner] received from [Boyce]." [DE 97, p. 19]. Petitioner also testified that he was told by the Court at the Rule 11 hearing that if he was found to be an armed career criminal that the punishment would be no less than fifteen years and that he, petitioner, testified that he understood his charge and related penalties. [DE 97, pp. 20–21].

Mr. Boyce also testified at the hearing. He testified that the first time petitioner was warned of the potential statutory minimum sentence was at his initial appearance. [DE 97, p. 32]. Mr. Boyce also testified that he was negotiating with the AUSA assigned to the case, John Bennett, from early on in the matter. [DE 97, pp. 28–29]. Tellingly, Mr. Boyce testified that during at least one conversation with Mr. Bennett, Mr. Boyce tried to convince Mr. Bennett to allow the matter to move forward as a state case, rather than a federal case, in part because Mr. Bennett "could not provide any concessions on the Armed Career Criminal Act, career offender status, or criminal history." [DE 97, pp. 28–29]. This information is compelling because it

5

indicates that Mr. Boyce was aware of, concerned about, and acting on petitioner's likely armed career criminal status before his guilty plea, contrary to petitioner's argument.

Other testimony indicated that Mr. Boyce shared this concern with petitioner, or at least that petitioner and his father were well aware of the potential applicability of the ACCA from early on, as was evidenced by their concern before the plea with a possible life sentence. [DE 97, pp. 32–33, 35, 39–40]. This testimony was supported by emails from Mr. Boyce's paralegal concerning petitioner and his father which reveal that Mr. Boyce made petitioner aware of the possibility of a life sentence well before petitioner pled guilty. Resp't's Ex. 6, 8.

This demonstration that the ACCA issue was on the table before the Rule 11 hearing is further corroborated by Mr. Boyce's time records which indicate "research regarding career offender, armed career criminal 18 USC 922 and 924" the day before a conference with petitioner which occurred before the Rule 11 hearing. Resp't's Ex. 1, p. 3. At the § 2255 hearing, Mr. Boyce testified that it is his practice before a plea to tell his clients "what the statutory minimums may be and what the maximum might be." [DE 97, p. 35]. Mr. Boyce also testified that he tells clients that "the sentencing is up to the Court." *Id.* Mr. Boyce stated that they "do the calculations at the appropriate time, including whether a career offender status or any other status might be applicable. But [he gives] no assurance at all as to what a potential sentence might be or what the applicable sentencing structure might look like." *Id.* Mr. Boyce had no recollection of having deviated from his standard practices in this case in any way. [DE 97, p. 83].

Mr. Boyce also testified as to the alleged conversation the day of petitioner's Rule 11 hearing which forms the basis of Claim Two. Mr. Boyce stated that he did not tell petitioner that

6

he would not be eligible for enhancement under the ACCA and that "it would be crazy to tell a client that's not going to apply to you." [DE 97, p. 37].

Mr. Boyce advised petitioner an attempt to withdraw his guilty plea may lead him to lose credibility with the Court but testified he never told petitioner he could not try to withdraw his plea. [DE 97, pp. 39–40]. Nevertheless, petitioner made no effort at sentencing to withdraw his guilty plea, despite his assertions at the § 2255 hearing that that was his desire. [DE 40, 42, 97].

The Court was given, by virtue of his inconsistency as to a crucial fact, reason to question petitioner's credibility. The Court was given no such reason to question Mr. Boyce's credibility, particularly in light of his contemporaneous record which corroborated his testimony as to critical points. Accordingly, the Court finds as a matter of fact that Mr. Boyce did not represent to petitioner that he would not fall under the ACCA, or even that Mr. Boyce was "not worried" about the Act. Consequently, the Court does not find that Mr. Boyce's conduct fell below an objective standard of reasonableness.

B. Prejudice Prong

Even if Mr. Boyce's conduct satisfied the performance prong, however, the Court is not persuaded petitioner would be afforded relief under *Strickland* due to the requirements of the prejudice prong.

When evaluating the prejudice prong of *Strickland*, "'[t]he challenger's subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts.'" *Christian v. Ballard*, 792 F.3d 427, 452 (4th Cir. 2015) (quoting *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012)). Indeed, the "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

7

Here, the Court recognizes petitioner's statement on brief and at the hearing that he would not have pled guilty had he known of the potential applicability of the ACCA but cannot find that such a decision would have been rational under the circumstances. [DE 49, 97, p. 16]. As Mr. Boyce testified, "[t]he case against Mr. Davis was extremely troublesome from a guilt/innocence review" for several reasons, including that petitioner was caught stealing the firearm on tape which his father later used to identify him. [DE 97, p. 27]. Moreover, the gun at issue was found in petitioner's home over twenty days later, which undermines the involuntary intoxication defense petitioner testified about wanting to raise. [DE 97, pp. 15–18, 28]. Recognizing, however, that there may be compelling evidence in mitigation, Mr. Boyce counseled petitioner to plead rather than proceed to trial and risk getting a sentence greater than 180 months; the Court finds that this was sound strategy on Mr. Boyce's part. [DE 97, p. 71–72]; *see Strickland*, 466 U.S. at 690 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks omitted)). For all these reasons, the Court does not find that petitioner has adequately demonstrated the prejudice prong.

As petitioner has not made a sufficient *Strickland* showing, Claim Two fails and must be dismissed.

III. Claim Three: "Ineffective Assistance of Counsel in Failing to Investigate and Advise About a Viable Defense of Involuntary Intoxication"

In Claim Three, petitioner argues counsel was ineffective for not investigating and advising petitioner on an involuntary intoxication defense. [DE 49].

As a foundational matter, "[f]ederal courts have recognized that possession of a firearm after a felony conviction is a general intent crime." *United States v. Fuller*, 436 Fed. Appx. 167, 168 (4th Cir. 2011), Consequently, "[b]ecause voluntary intoxication is a defense only to specific

8

intent crimes, courts agree that the defense does not apply to the general intent crime in § 922(g)(1)." *Id.* As the nature of the crime at issue forecloses an involuntary intoxication defense, the Court cannot find that it fell below an objective standard of reasonableness for counsel not to make such an argument.

Moreover, even if such a defense were available, the decision not to raise it may have been a sound, strategic one in light of the length of time between when the gun at issue was stolen and when it was discovered. *See Strickland*, 466 U.S. at 690 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks omitted)).

As petitioner has not made a sufficient *Strickland* showing, Claim Three fails and must be dismissed.

IV. Claim Four: "The Sentence Imposed Was Excessive and Disproportionate Under the Eighth Amendment"

In Claim Four, petitioner argues that his sentence, the mandatory minimum of 180 months' imprisonment, violates the Eighth Amendment of the United States Constitution, and that his attorney was ineffective for not raising this argument.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Under an "as applied" challenge to the proportionality of a sentence, "a defendant contests the length of a certain term-of-years sentence as being disproportionate given all the circumstances in a particular case." *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014) (internal quotation marks omitted). This standard "forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotation marks omitted). This analysis begins with determining "that a threshold comparison of the gravity of the offense and the severity of the

9

sentence leads to an inference of gross disproportionality." *Id.* Here, the Court finds no inference of gross disproportionality. In reaching this conclusion, the Court considers the nature of the crime, the sentence imposed, and precedent on the issue. *See Solem v. Helm*, 463 U.S. 277 (1983) (finding unconstitutional a sentence of life without parole for a recidivist who passed a bad check for $100); *see also Cobler*, 748 F.3d at 576 ("Since the decision in *Solem*, no defendant before the Supreme Court has been successful in establishing even a threshold inference of gross disproportionality" and collecting cases).

Under a categorical challenge, "a defendant asserts that an entire class of sentences is disproportionate based on the nature of the offense or the characteristics of the offender." *Id.* (internal quotation marks omitted). The first step of this analysis is to consider "whether a national consensus against the sentencing practice at issue is evident from objective indicia of society's standards, as expressed in legislative enactments and state practice." *Id.* at 577 (internal quotation marks omitted). Here, it is plain that that is not the case, as the sentence imposed was a mandatory minimum sentence, imposed by courts across the country and established by legislative enactment.

For the reasons discussed above, petitioner's Eighth Amendment claim fails. As this was an unsound argument, the Court does not find that counsel's performance fell below an objective standard of reasonableness for not making it. As petitioner has not made a sufficient *Strickland* showing, Claim Four fails and must be dismissed.

## Certificate of Appealability

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is

10

Case 5:11-cr-00311-BO   Document 105   Filed 09/01/16   Page 10 of 11

debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). Here, as reasonable jurists would not find this Court's dismissal of petitioner's § 2255 motion debatable, a certificate of appealability is DENIED.

## CONCLUSION

For the reasons discussed above, the government's motion to dismiss is GRANTED. [DE 58, 101]. Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255 is hereby DISMISSED. [DE 49]. A certificate of appealability is DENIED.

SO ORDERED, this __1__ day of __September__, 2016.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE